UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANK CORNELIUS, ROBERT DUNCAN, JULIE DUNCAN, and AMY SUTHERLAND,<br><br>Plaintiff(s),<br><br>v.<br><br>FIDELITY NATIONAL TITLE COMPANY and FIDELITY NATIONAL TITLE COMPANY OF WASHINGTON, INC.,<br><br>Defendant(s). | NO. C08-754MJP<br><br>ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS |

The above-entitled Court, having received and reviewed:

1. Defendants' Motion for Judgment on the Pleadings (Dkt. No. 24)
2. Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) (Dkt. No. 26)
3. Reply in Support of Defendants' Motion for Judgment on the Pleadings (Dkt. No. 28)

and all attached exhibits and declarations and supplemental authority, makes the following ruling:

IT IS ORDERED that the motion is GRANTED IN PART and DENIED IN PART, as follows:

The motion for judgment on the pleadings is GRANTED as to Counts II, IV, V, VI (as to the out of state Consumer Protection Act claims only), VII, VIII (as to the "retained interest" claim) and IX.

Defendants' motion regarding the claims under the Real Estate Settlement Procedures Act ("RESPA") of Plaintiffs Robert Duncan, Julie Duncan and Amy Sutherland is GRANTED and those claims are DISMISSED as to those Plaintiffs on the grounds that they are time-barred.

**ORDER ON MTN FOR**
**JMT ON PLEADINGS - 1**

The motion for judgment on the pleadings is DENIED as to Counts I, III, VI (as to the Washington Consumer Protection Act claim only) and VIII (as to the "reconveyance fees" claim).

**Background**

The following allegations are taken from Plaintiffs' First Amended Class Action Complaint ("FAC;" Dkt. No. 2), and from documents referenced in that complaint:

Plaintiffs are residents of Washington who have refinanced their homes within the past three years. ¶¶ 11-13. Defendant Fidelity National Title Company ("FNTC") served as the escrow company for Plaintiffs Cornelius and Duncan (¶¶ 30, 61) and Defendant Fidelity National Title Company of Washington ("FNTCW") was the escrow company used in the Sutherland transaction. ¶ 81.

At closing, each of the plaintiffs signed a document entitled "Closing Agreement and Escrow Instructions" ("Escrow Agreement;" Appendix to Defs' Motion; pp. 16, 31, 41) and a HUD-1 Settlement Statement ("HUD-1;" Appendix, p. 15). The Escrow Agreement contained instructions to the escrow agent to "select, prepare, correct, receive, hold, record and deliver documents as necessary to close the transaction;" and to "deliver and record documents according to these instructions." ¶¶ 52, 55. The Escrow Agreement further stated that the "closing agent's fee is intended as compensation for the services set forth in these instructions." ¶ 53.

The HUD-1 document was described in the Escrow Agreements as "a settlement statement showing all the funds deposited for the account of each of the parties and the proposed disbursements from such funds." The settlement statement recorded the existence of a separate "reconveyance processing" fee to a "Payee" described as "Post Closing Department." Appendix, p. 15.

Each of the Escrow Agreements also contained a "Credits" section which read: "The parties to this transaction acknowledge that earnings on funds deposited in escrow accounts are used to offset administrative costs. . . and hold down our escrow fees." Appendix, pp. 16, 31, 45.

**ORDER ON MTN FOR
JMT ON PLEADINGS - 2**

1  Plaintiffs' Complaint alleges that the "reconveyance processing" fee was an improper duplicate reconveyance fee and that the escrow instructions obligated Defendants to perform the necessary reconveyance processing as part of their contractual duties. ¶¶ 127-133. Plaintiffs further allege that "Post Closing Department" was not a separate third party to whom Defendants disbursed the "reconveyance processing" fee, but that Defendants retained those fees for services which they were already obligated to perform for their initial escrow fee. ¶¶ 59, 78, 99.

Plaintiffs' Complaint also maintains that the "earnings credits" on deposited escrow funds described by the Escrow Agreement were not used by Defendants to offset costs and lower fees, but were a form of "retained interest" on their funds to which Defendants are not entitled.

Finally, Plaintiffs allege that Defendants concealed from them the "true nature of their illegal, unfair and deceptive practice[s]," which Plaintiffs did not (and could not have) discovered until shortly before their complaint was filed. ¶¶ 111, 112, 114.

**Discussion**

In considering a motion for judgment on the pleadings under FRCP 12(c), the Court is obligated to "accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party." Turner v. Cook, 362 F.3d 1219, 1225 (9th Cir. 2004). The moving party on a 12(c) motion is entitled to judgment only when that party "clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law," and that there are no facts which Plaintiffs could adduce which would entitle them to relief. Enron Oil Trading & Transportation Co. v. Walebrook Ins. Co., Ltd., 132 F.3d 526, 529 (9th Cir. 1997). The Court is entitled to consider not only the complaint itself, but also attachments to the complaint and any other documents on which the complaint necessarily relies. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

The remainder of this order will be devoted to analyzing, count by count, Defendants' arguments (and Plaintiffs' counter-arguments) concerning the dismissal of the claims (including Defendants' argument that certain of the claims of certain Plaintiffs should be dismissed as time-barred).

Count I: Breach of Contract (Escrow Instructions)

Plaintiffs claim that Defendants breached the Escrow Agreement by (1) "charging reconveyance fees in addition to the escrow fees charged for no additional settlement services other than those Defendants were already obligated to perform," and (2) "failing to disclose. . . that [Plaintiffs] were not required to use Defendants for reconveyance related settlement services and that reconveyance processing was actually being performed by the prior lenders at no charge or for fees separately paid by Plaintiffs." ¶¶ 132, 133.

Concerning the reconveyance fees, Defendants seek dismissal of this breach of contract claim on the grounds that Plaintiffs agreed to pay the costs listed on the HUD-1 statement (which disclosed the "reconveyance processing" fee) and that the Escrow Agreements permitted them to charge separately for "additional services" necessary to "comply with any change or addition to the agreement." As for the "failure to disclose," they point out that nothing in the Escrow Agreements required them to convey to Plaintiffs that their customers were not obligated to use their services.

What Defendants do not dispute is that the Escrow Agreement constituted a valid contract. Plaintiffs have alleged facts which constitute a breach of that agreement (¶¶ 132, 133), and the issue of whether a party has breached a contract is a question of fact. Palmiero v. Spada Distributing Co., 217 F.2d 561, 565 (9th Cir. 1954); Frank Coluccio Constr. Co., Inc. v. King County, 136 Wn.App. 751, 762 (2007). Accepting, as the Court must, the allegations as factual, Defendants are not entitled to judgment on the pleadings on this cause of action.

**ORDER ON MTN FOR JMT ON PLEADINGS - 4**

Count II: Breach of Contract (HUD-1 Statement)

There is currently no precedential legal authority on whether these settlement statements constitute contractual agreements. The cases cited by Defendants (Hampden Real Estate, Inc. v. Metro. Mgmt. Group, 142 Fed. Appx. 600 (3rd Cir. 2005); and Doll v. Chicago Title Ins. Co., 246 F.R.D. 683 (D.Kan. 2007)) do not stand for the general proposition that HUD-1's are not contracts.[1] Plaintiffs' attempt to characterize Slapikas v. First Am.Title Ins.Co., 250 F.R.D. 232, 245 (W.D.Pa. 2008) as supporting their position that HUD-1's are contracts is not well-taken – the Slapikas court specifically declined to rule on the issue in its order, choosing instead to defer the determination to a later date ("The court will not resolve the merits of the parties' arguments at this class certification stage..."). Id.

This Court, however, has no difficulty in ruling as a matter of law that the HUD-1 settlement statement before it is not a contract. The elements of a contract under Washington law are "' the subject matter of the contract, the parties, the promise, the terms and conditions, and (in some but not all jurisdictions) the price or consideration.'" DePhillips v. Zolt Constr. Co., 136 Wn.2d 26, 31 (1998). Although Plaintiffs assert that "[e]ach element required for a contract is. . . present," (Response, p. 8), their assertion is largely unsupported by a close reading of the agreement. It is simply (as it says) "a statement of all receipts and disbursements made" on the party's escrow account. There are no "terms and conditions." The document reflects no fee paid by Plaintiffs as consideration for a separate "HUD-1 contract."

Most significantly, there is no "promise" as that term is used in contractual analysis. A contractual promise is defined as a manifestation of intention to act or to refrain from acting in a specified way, made as to justify the promisee in understanding that a commitment has been made

---

[1] The Court is aware of only one case (Koschene v. Hutchinson, 73 Va. Cir. 103 (Va.Cir.Ct. 2007)) that has so held; it is not binding precedent in this jurisdiction.

**ORDER ON MTN FOR**
**JMT ON PLEADINGS - 5**

(Swanson v. Liquid Air Corp., 118 Wn. 2d 512, (1992); Brady v. Daily World, 105 Wn. 2d 770, (1986); Restatement (Second) of Contracts § 2 (1981)); it is an undertaking, however expressed, either that something will happen, or that something will not happen, in the future. Plumbing Shop, Inc. v. Pitts, 67 Wn. 2d 514 (1965). The "promise" contained in the HUD-1 document is simply a representation that what is written is "a true and accurate statement;" there is no representation that something will, or will not, happen in the future.[2] If Defendants' statement alone (that the moneys listed on the statement are an accurate reflection of the funds received and disbursed) constituted a contractual promise, every document signed under penalty of perjury would be transformed into a contractual agreement.

Even assuming *arguendo* that Plaintiffs are correct in describing the document as a contract, what they have alleged in their Complaint is not a breach of the promise contained in the agreement to make "a statement of all receipts and disbursements made" on the party's escrow account. This cause of action asserts that the "fail[ure] to disclose to Plaintiffs and the Reconveyances Classes that they were not required to use Defendants for reconveyance services and that the reconveyance processing was actually being performed by the prior lenders at no cost or for fees separately paid" was a breach of the contract comprised by the HUD-1 settlement statement. ¶ 139. Those obligations to disclose, to the extent that they exist at all, are nowhere contained in the promise of accurately recording the disbursements and receipts in the escrow accounts and no argument of an "implied duty of good faith and fair dealing" can be stretched wide enough to encompass the acts of which Plaintiffs complain.

---

[2] Although the HUD-1 itself does not say so, the HUD-1 document was described in the Escrow Agreements as "a settlement statement showing all the funds deposited for the account of each of the parties and *the proposed disbursements from such funds*." (Appx., p. 15; emphasis supplied.) Even if the Court assumes that this represents a "promise" to which Defendants were bound by the execution of the HUD-1, there is no allegation that the disbursements were not made from the funds as proposed in the HUD-1.

**ORDER ON MTN FOR**
**JMT ON PLEADINGS - 6**

The Court finds as a matter of law that the HUD-1 settlement statement is not a contract, that Plaintiffs have failed to allege a breach of contract in Count II, and Defendants' motion to dismiss that claim will be granted.

Count III: Violation of RESPA (Reconveyance Fees)

This is the first of several causes of action alleging that Defendants' practices violated the Real Estate Settlement Procedures Act ("RESPA;" 12 U.S.C. § 2601 et seq.). In this cause of action, Plaintiffs allege five separate ways in which Defendants' assessment of a separate "reconveyance processing" fee (above and beyond the escrow fee already paid by Plaintiffs) constituted a RESPA violation. ¶¶ 143-147.

Defendants' response to this claim is simple: RESPA does not apply to reconveyance fees; they are not "settlement services," as defined by that statute. The Court notes, at the outset, that the RESPA definition of "settlement services" is expansive, not exclusive. It defines that term as "any service provided in connection with real estate settlement, *including but not limited to*..." and then describes a number of transactions associated with real estate settlements. 12 U.S.C. § 2602(3) (emphasis supplied). Nowhere is the phrase "reconveyance processing" or "reconveyance fees" used, but neither is it specifically excluded.

Defendants' entire argument rests on the holding of Bloom v. Martin, 77 F.3d 318 (9th Cir. 1996), which they contend stands for the general proposition that "reconveyance services do not constitute 'settlement services' under RESPA." Motion, p. 13. A closer reading of the opinion does not support such a broad interpretation. The Bloom opinion is distinguishable from the facts before this Court on several grounds.

The Bloom court was responding to appellants' argument that "RESPA and Regulation X require lenders to disclose through HUD-1 and the good faith estimate that demand and reconveyance fees *may be assessed in the future.*" 77 F.3d at 320 (emphasis supplied). The Ninth Circuit noted

that, in the matter before them, the "HUD-1 does not expressly refer to either reconveyance or demand fees." Id. at 321. The Bloom opinion is based on the Ninth Circuit's finding that

> HUD-1 is essentially a balance sheet of the costs assessable to each party at the time of the settlement. The inclusion of uncertain future costs like reconveyance and demand fees would be inconsistent with this structure.
>
> RESPA's non-exhaustive list of settlement services also suggests a limitation to costs payable at or before settlement. Id.

The facts before this Court are simply not encompassed in the Bloom rationale. Defendants' HUD-1 statement <u>does</u> refer to the reconveyance processing fee. In the transactions complained of by Plaintiffs, the reconveyance fee was not an "uncertain future cost," but rather a cost "payable at or before settlement." And, contrary to Defendants' argument that (regardless of when the payment is assessed) reconveyance is a post-closing activity and therefore outside the scope of RESPA, the Bloom court refers to "costs payable at or before settlement," not services performed at or before closing.

The Court finds that Plaintiffs have adequately plead a RESPA violation by virtue of the Defendants' assessment of a reconveyance processing fee, and the motion to dismiss this cause of action will be denied.

Count IV: Violation of RESPA (Retained Interest)

Plaintiffs allege a further violation of RESPA in Defendants' practice of depositing pooled escrow funds at banking institutions, and "receiving interest, earning credits and other benefits. . . in exchange." This count asserts that this "Retained Interest" practice constitutes the acceptance of a "fee, kickback and thing of value pursuant to an agreement and understanding to refer business incident to or part of real estate settlement services in involving federally related mortgage loans" in contravention of 12 U.S.C. § 2607 and Regulation X, 24 C.F.R. § 3500.14. ¶¶ 152, 153.

A plaintiff has standing to sue when that party has (1) suffered an "injury in fact" (2) that is causally connected to the complained-of conduct and (3) that can be redressed by a "favorable

**ORDER ON MTN FOR
JMT ON PLEADINGS - 8**

decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992; citations omitted). A plaintiff suffers an "injury in fact" by virtue of the "invasion of a legally-protected interest which is (a) concrete and particularized and (b) 'actual or imminent.'" Id. at 560 (citations omitted).

The Court finds that Plaintiffs lack standing to assert a RESPA violation for Defendants' "earnings credits" arrangement with their banks, based on their inability to allege an "injury in fact." The Ninth Circuit has described "earnings credits" of the sort at issue here as "nothing but incentive payments to repeat customers [of the banks]" – i.e., the escrow companies – which are "never the property of the escrow companies' customers." Washington Legal Foundation v. Legal Foundation of Washington, 271 F.3d 835, 858 (9th Cir. 2001) (en banc). Since Plaintiffs have no legally protected interest in the "earnings credits" practice which a favorable decision would redress, they lack standing to bring this claim.

Even if Plaintiffs were able to successfully establish standing, the deposit of their pooled escrow funds with a bank does not constitute "refer[ral of] business incident to or part of real estate settlement services." Defendants' decision to deposit moneys entrusted to it in one banking institution or another is a function of the relationship between themselves and the banks, and not a function of their escrow agent-client relationship. The earnings credits, or any other benefits that accrue to them as a result of the banker-depositor relationship, do not arise out of the referral of real estate settlement services and hence cannot be the subject of a RESPA claim. The Court is persuaded that the "earnings credit" practice is a function of the relationship between the Defendants (as depositors) and their banks, not between the Defendants (as escrow companies) and their clients. RESPA is not implicated by this practice.

Defendants' motion to dismiss Count IV will be granted.

**ORDER ON MTN FOR JMT ON PLEADINGS - 9**

Count V: Violation of RESPA (Failure to Disclose Affiliation)

The final RESPA violation asserted by Plaintiffs consists of allegations that Defendants Fidelity National Title Company and Fidelity National Title Company of Washington referred each others' escrow customers to the other company for title insurance services without (1) disclosing that they were affiliated companies, (2) providing a written estimate of the charges to be paid, or (3) disclosing that Plaintiffs were not required to use the referral company for title insurance business. ¶¶ 158, 159. Plaintiffs' Complaint contends that this constituted a violation of 12 U.S.C. § 2607 and Regulation X (24 C.F.R. § 3500.14). ¶ 160.[3]

Plaintiffs have not adequately pled a violation of RESPA by virtue of this claim. One will search the language of the statute in vain for a prohibition against any of the activities described above <u>unless</u> the referring party has received a "fee, kickback or thing of value" in exchange for the referral. There are no allegations in this cause of action of any such payment, nor a citation to any explicit requirement in the RESPA provisions that an escrow company disclose an affiliation with a referral company[4] or disclose that a consumer is not required to use a referral company for title insurance purposes. The Court cannot assume that there is a benefit of the sort prohibited by RESPA in the referrals of which Plaintiffs complain; the federal rules require that they allege it.

Defendants' motion to dismiss Count V will be granted.

RESPA Statute of Limitations re: Plaintiffs Robert and Julie Duncan and Amy Sutherland

Private parties must assert alleged violations of RESPA within one year from the "date of the occurrence of the violation." 12 U.S.C. § 2614. Barring extenuating circumstances, "[t]he date of the occurrence of the violation is the date on which the loan closed." <u>Bloom v. Martin</u>, 865 F.Supp. 1377,

---

[3] Plaintiffs also assert a violation of 24 C.F.R. § 3500.2 in this cause of action; that is the "Definitions" section of Regulation X of RESPA, and the Court fails to see how a defendant can violate the definitions provision of a statute.

[4] The Court also feels constrained to point out the implausibility of alleging the "concealment" of an affiliation between entities named Fidelity National Title Company and Fidelity National Title Company of Washington.

**ORDER ON MTN FOR**
**JMT ON PLEADINGS - 10**

1386-87 (N.D.Cal. 1994); aff'd, 77 F.3d 318 (9th Cir. 1996). Plaintiffs do not contest Defendants' assertion that the filing of their original Complaint (on May 14, 2008) was nearly 18 months after the Duncans' loan closed (¶¶ 61-80) and 27 months after the closing of the Sutherland loan (¶¶ 81-101). (For ease of reference, the Court will refer to these parties as the "late-filed Plaintiffs.") Defendants argue on that basis that the RESPA claims of these plaintiffs are time-barred.

The "late-filed Plaintiffs" assert that they are entitled to the protection of the equitable tolling doctrine. To establish entitlement to equitable tolling, a plaintiff must provide proof "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Mendoza v. Carey, 449 F.3d 1065, 1068 (9th Cir. 2006). The burden of alleging facts which warrant tolling the statute rests on the plaintiff seeking equitable protection. Hinton v. Pacific Enterprises, 5 F.3d 391, 395 (9th Cir. 1993).

Equitable tolling issues are "not generally amenable to resolution on Rule 12(b)(6) motion" because they "often" depend on matters outside the pleadings. Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995) (citation omitted). A court should only grant a motion to dismiss on statute of limitation grounds if the allegations of the complaint ("read with the required liberality") would not permit a plaintiff under any set of facts to establish that the claim was timely. Id. (citations omitted).

The "late-filed Plaintiffs" contend that their pleadings (and the facts of their case) establish grounds for "excusable delay" under which no reasonable plaintiff would have known of the existence of a possible claim within the limitations period. Response, p. 18 (citations omitted). The Court finds that this is not the case and that Plaintiffs have pled no set of facts under which they can establish their RESPA claims are timely filed.

First of all, the Court dispenses with any arguments concerning the RESPA claims contained in Counts IV and V (the "Retained Interest" and "failure to disclose affiliation" causes of action). Those

**ORDER ON MTN FOR
JMT ON PLEADINGS - 11**

claims have been dismissed on other grounds and the issue of whether these particular Plaintiffs filed them within the statute of limitations is moot.

This leaves only the question of the timeliness of filing Count III, concerning the "reconveyance processing" fees assessed in addition to the escrow fees already paid by Plaintiffs. This cause of action consists of five separate allegations of RESPA violations centered around the assessment of the reconveyance fee. Certain of those allegations are such that under no conceivable set of facts could the "late-filed Plaintiffs" adequately plead a sufficient RESPA claim. The allegation (contained in ¶ 144) that Defendants were assessing duplicate reconveyance fees for services they were already obligated to perform is based on information contained in the documents (the Escrow Agreements and HUD-1 statements) that Plaintiffs signed. See Response, p. 6. Since the loan documents gave them notice of this claim, Plaintiffs will be held to have known it. Moll v. U.S. Life Title Ins. Co., 700 F.Supp. 1284, 1293 (S.D.N.Y. 1988). Equitable tolling will not be applied to this portion of the late-filed Plaintiffs' claim.

Plaintiffs' allegations that Defendants failed to provide a written estimate of charges to be paid (¶ 145) are likewise evident (to the extent that they are true) from the face of the documents which they signed, and the Court will hold the "late-filed Plaintiffs" to have known it from the date of signing. For these allegations as well, equitable tolling is not available. And, as has been previously discussed *supra,* Plaintiffs have cited to no provision of RESPA which mandates escrow companies to disclose that consumers are not required to use a certain title insurance company (¶ 145), so the Court will not consider the question of whether the statute of limitation on that particular non-violation has been tolled.

Concerning the remaining allegations in this cause of action, the "late-filed Plaintiffs'" rely solely on their pleading that they "had no knowledge that Defendants had engaged in illegal, unfair or deceptive practices" and "could not have reasonably discovered Defendants' illegal, unfair and

**ORDER ON MTN FOR
JMT ON PLEADINGS - 12**

deceptive practices as alleged herein until recently." ¶¶ 112, 114.  These purely conclusory assertions are of no use to Plaintiffs or the Court, and are devoid of any set of facts under which the "late-filed Plaintiffs" might be entitled to equitable tolling.  See Hinton, 5 F.3d at 395 (on a 12(b)(6) motion, party seeking tolling bears the burden of alleging facts which would give rise to tolling).

The Court finds that the RESPA claims of the "late-filed Plaintiffs" are outside of the statute of limitations, not entitled to equitable tolling and therefore may be dismissed as time-barred.[5]

Count VI: Consumer Protection Act

For purposes of this order, the Court will divide this claim into two parts: the Washington Consumer Protection Act ("CPA") and the Consumer Protection Acts of 34 other states and the District of Columbia ("the out of state CPA claims").

*Washington Consumer Protection Act*

In calling for dismissal of this portion of Plaintiffs' cause of action, Defendants cite to the seminal Washington CPA case, Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn. 2d 778 (1986), and the Washington Supreme Court's analysis of escrow transactions as "an essentially private transaction. . . rather than a consumer transaction."  Id. at 539.  Setting aside the question of whether Hangman Ridge held that all escrow transactions are private transactions, this Court finds that even characterizing Plaintiffs' transactions here as private transactions does not necessarily exclude them from CPA coverage.

The gravamen of any claim under the Washington CPA, for a "private" or "consumer" transaction, is whether it affects the public interest.  Where a transaction gives rise to a "private dispute," Hangman Ridge held that "it may be more difficult to show that the public has an interest in

---

[5] Although Plaintiffs' Complaint contains a conclusory assertion of estoppel ("Defendants are estopped from relying on any statute of limitations defense because of their illegal[,] unfair and deceptive pricing practices as alleged herein;" ¶ 113), Plaintiffs make no response to Defendants' argument that they have failed to allege any factual predicates which would entitle them to claim estoppel.  The Court finds none in the Complaint.

**ORDER ON MTN FOR**
**JMT ON PLEADINGS - 13**

the subject matter," but it is not impossible. Id. at 790. "[I]t is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." Id. (citation omitted). The Hangman Ridge court went on to list four factors indicating public interest in the "private transaction" context: (1) Were the acts committed as part of defendant's business? (2) Was defendant's business advertised to the general public? (3) Were these particular plaintiffs actively solicited by defendant? (4) Did plaintiff and defendant occupy unequal bargaining positions? The court went on to say:

> As with the factors applied to essentially consumer transactions, not one of these factors is dispositive, nor is it necessary that all be present. The factors in both the "consumer" and "private dispute" contexts represent indicia of an effect on public interest from which a trier of fact could reasonable find public interest impact.
> Id. at 790-91.

The Court finds that Plaintiffs have sufficiently pled a claim for relief under the Washington CPA. Regarding the threshold Hangman question, Plaintiffs' allegations of violations of Consumer Protection Acts in 34 other states and the District of Columbia is adequate to establish the likelihood that other plaintiffs have been or will be injured by this conduct. Not all of the "public interest in a private dispute" factors are met by the pleadings, but they do not have to be. Plaintiffs have adequately pled that the complained-of practices were done in the course of Defendants' business and that the parties occupied unequal bargaining positions (¶¶ 5, 16, 18-21, 32, 63, 83, 103, 148) and that is a sufficient allegation of a public interest impact to survive a motion to dismiss.

Defendants' motion to dismiss Plaintiffs' claims under the Washington CPA is denied.

*CPAs of 34 Other States and the District of Columbia (the "out of state CPAs")*

Plaintiffs allege that escrow agents violated the consumer protection laws in "35 states and the District of Columbia," (¶ 166), a claim which Defendants attack on grounds of standing: Plaintiffs do not allege that they suffered the invasion of a legally protected interest under the laws of any other state except Washington.

**ORDER ON MTN FOR
JMT ON PLEADINGS - 14**

The argument is well-taken. "A class cannot assert a claim on behalf of an individual they cannot represent." In re Graphics Processing Units Antitrust Litig., 527 F.Supp. 2d 1011, 1026-27 (N.D.Cal. 2007) (dismissing claims on behalf of residents of the non-forum state on the basis that "there is no named plaintiffs from those states."). The "out of state CPA" claims of this Complaint do little more than "name the preserve on which [Plaintiffs] intend[] to hunt." Johnson v. Ga. Highway Express, Inc., 417 F.2d 1122, 1126 (5th Cir. 1969) (Godbold, J., concurring). This is not enough to confer standing.

Plaintiffs acknowledge that they themselves do not have claims under the out of state CPAs, arguing instead that members of their putative class will have them (Response, p. 22) and requesting that the question of standing be deferred until class certification. Id. at 24. Plaintiffs cite cases where, in "appropriate circumstances," federal courts have certified classes under multi-state laws in cases which did not name plaintiffs from each state, but in one of Defendants' cases the court engaged in no analysis of the multi-state factor (Bussie v. Allmerica Fin. Corp., 50 F.Supp.2d 59 (D.Mass. 1999); another case concerned a class action claiming violations of the Uniform Commercial Code – which is "uniform" across state lines – in 50 states (Shaw v. Toshiba Am. Info. Sys., 91 F.Supp.2d 942 (E.D.Tex. 2000); and a third involved a finding that the differences between the multistate laws "[did] not appear to be so great as to undermine the predominance of common questions of law," an allegation missing from this Complaint (Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54, 58 (D.Mass. 1997).

Plaintiffs have provided no compelling reason to defer the standing issue until a later date. The Complaint fails to name plaintiffs who have suffered the injuries giving rise to claims under the out of state CPAs. The current Plaintiffs have no standing to bring those claims, and they will be dismissed pursuant to Defendants' motion.

Count VII: Unjust enrichment

Plaintiffs seek "full restitution and disgorgement" of the damages they allege as a result of the assessment of the reconveyance processing fees and the "Retained Interest scheme." ¶¶ 174-181. As Defendants point out, unjust enrichment is an equitable, quasi-contractual remedy, inapplicable to a written contract. "A party to an express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same subject matter, in contravention of the express contract." McDonald v. Hayner, 43 Wn.App. 81, 84 (1996).

Plaintiffs' response to this argument focuses on the "earnings credits" provision of their Escrow Agreements, contending that its vagueness and ambiguity permit the Court to employ quasi-contractual principals because the contract does not "explicitly cover the subject of the claims." Response, p. 15. But the case they cite in support of their position (Pierce County v. State, 144 Wn.App. 783 (2008)) merely stands for the proposition that compensation for performance of services not covered by a contract may be redressed through equitable remedies. This is not the case here, and having found that Plaintiffs have alleged the existence of a valid contract (the Escrow Agreement) which does cover the subject of their claims, the Court cannot simultaneously permit a claim based on quasi-contractual principles to go forward.

Defendants' motion to dismiss the cause of action will be granted.

Count VIII: Breach of fiduciary duty

Plaintiffs allege that Defendants breached their fiduciary duties by improperly collecting and processing reconveyance fees and failing to remit to them the interest and/or earnings credits from the banks where Plaintiffs' escrow funds were deposited. ¶ 184.

In order to state a claim for breach of fiduciary duty, a plaintiff must allege (1) the existence of a duty owed; (2) a breach of that duty; (3) injury; and (4) a proximate cause relationship between the breach and the injury. Micro Enhancement Int'l v. Coopers & Lybrand, Inc., 110 Wn.App. 412, 432

(2002). Defendants deny any duty extending beyond the scope of their escrow instructions and argue that Plaintiffs have failed to allege that any activity breached those instructions.

The Court initially disposes of the portion of Plaintiffs' claims of breach of fiduciary duty arising out of the "earnings credit/retained interest" aspect of their transactions with Defendants. As analyzed in detail *supra*, Plaintiffs have no legally protected interest in the "earnings credits" which arise out of the relationship between Defendants as bank depositors and their banks, therefore no standing to allege claims arising out of that financial transaction.

Concerning the "duplicate reconveyance processing fee" claim, the Court is not persuaded by Defendants' argument that Plaintiffs have failed to sufficiently plead a violation of fiduciary duty. Defendants do not deny that as escrow agents they have a fiduciary duty to their clients, they simply contend that their duty is limited to the terms of their escrow instructions. Washington case law supports them in this limitation. See National Bank of Washington v. Equity Investors, 81 Wn. 2d 886, 910 (1973) ("The escrow agent's duties and limitations are defined, however, by his instructions . . . As a general rule, the escrow holder must act strictly in accordance with the provisions of the escrow agreement. . ."); and Denaxas v. Standstone Court of Bellevue, LLC, 148 Wn.2d 654, 663 (2003) (en banc) (ruling for defendant where plaintiff could not "allege any deviation from the agreed-upon instructions").

But, accepting Plaintiffs' allegations as true, they have alleged deviations from the escrow instructions. Basically, their allegations concerning the reconveyance processing fees amount to pleading in the alternative: in alleging that the escrow instructions obligate Defendants to perform any reconveyance processing themselves as part of the services covered by their escrow fees, Plaintiffs have alleged that Defendants either (1) did not perform the reconveyance processing as agreed upon or (2) performed the reconveyance processing (through a "sham" third party, Post Closing

Department) and charged Plaintiffs twice for it. Either allegation, if true, satisfies the "breach of fiduciary duty" elements and permits Plaintiffs to go forward with this cause of action.

Defendants' motion to dismiss this portion of Plaintiffs' breach of fiduciary duty claim will be denied.

Count IX: Breach of agency duty

Plaintiffs' cause of action for breach of agency duty is predicated entirely on their allegations concerning Defendants' practice of "receiving and retaining interest on escrow deposits." ¶ 188. As analyzed in detail *supra*, the Court finds that Plaintiffs have no standing to bring claims related to Defendants' relationship as depositors with their banks. Since Plaintiffs could not receive the earnings credits which the banks grant to Defendants, there is no legally protected interest being invaded, and no "concrete and particularized" injury which could be redressed by a judgment in Plaintiffs' favor on this claim.

Defendants' motion to dismiss this cause of action will be granted.

**Conclusion**

The motion for judgment on the pleadings is GRANTED as to Counts II, IV, V, VI (as to the out of state Consumer Protection Act claims only), VII, VIII (as to the "retained interest" claim) and IX.

Defendants' motion regarding the claims under the Real Estate Settlement Procedures Act ("RESPA") of Plaintiffs Robert Duncan, Julie Duncan and Amy Sutherland is GRANTED and those claims are DISMISSED as to those Plaintiffs on the grounds that they are time-barred.

The motion for judgment on the pleadings is DENIED as to Counts I, III, VI (as to the Washington Consumer Protection Act claim only) and VIII (as to the "reconveyance fees" claim).

**ORDER ON MTN FOR
JMT ON PLEADINGS - 18**

The clerk is directed to provide copies of this order to all counsel of record.

Dated: March __9___, 2009

*[signature: Marsha J. Pechman]*

Marsha J. Pechman
U.S. District Judge

**ORDER ON MTN FOR
JMT ON PLEADINGS - 19**