1

2              UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
3                     AT SEATTLE

4   FRANK CORNELIUS, et al.,

5                  Plaintiff(s),
                                              NO. C08-754MJP
6        v.
                                              ORDER ON DEFENDANTS'
7   FIDELITY NATIONAL TITLE COMPANY of         MOTION FOR SUMMARY
    WASHINGTON, et al.,                        JUDGMENT
8
                   Defendant(s).
9

10       The above-entitled Court, having received and reviewed

11       1.      Defendants' Motion for Summary Judgment (Dkt. No. 71)

12       2.      Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 84)

13       3.      Reply in Support of Defendants' Motion for Summary Judgment (Dkt. No. 87)

14       4.      Notice of Supplemental Authority (Dkt. No. 92)

15   and all attached declarations and exhibits, makes the following ruling:

16       IT IS ORDERED that Fidelity National Title Company is DISMISSED as a party defendant

17   in this matter.

18       IT IS FURTHER ORDERED that Defendants' motion for summary judgment is GRANTED;

19   Plaintiffs' remaining claims against Defendant Fidelity National Title Company of Washington, Inc.

20   are DISMISSED with prejudice.

21   **Background**

22       Fidelity National Title Company of WA (FNTCW) acted as an escrow agent for the

23   refinancing of Plaintiffs' homes.  A portion of the refinancing process is known as "reconveyancing"

24   – the transfer of title from the previous lender to the borrower once the original loan is paid off.

25

26   **ORDER ON MTN**
     **FOR SUMM JMT - 1**

Johnson Decl., ¶ 7.   Because of complexities and delays that can arise in this process, a separate service fee is sometimes charged for "tracking" the reconveyance; i.e., making sure that the documents are successfully transferred.  Reconveyance tracking can be done by one of the lenders, by the trustee or by a third party.  Id. at ¶ 10; First Amended Complaint (FAC; Dkt. No. 2) ¶ 20.  In the transactions at issue before the Court, FNTCW used the services of a third party, Post Closing Department (PCD) to track the reconveyance, and charged their escrow clients for the service.

Washington State's Department of Financial Institutions (DFI) – the private escrow company regulatory body – recognizes that either escrow companies or private vendors may perform this function, that additional fees may be charged for it, and that unused fees should be refunded to the borrower.  Fogarty Decl., Ex. 1; Johnson Decl., ¶ 19.

In this matter, all the Plaintiffs executed a series of documents prepared by FNTCW.  One was the Closing Agreement and Escrow Instructions (the Agreement), which enumerated FNTCW's duties as the escrow agent for the transaction.  Johnson Decl., Ex's 12, 22 and 30.   Those duties included:

**Documents**
The closing agent is instructed to select, prepare, correct, receive, hold, record and deliver documents as necessary to close the transaction.  The closing agent may request that certain documents be prepared or obtained by the parties or their attorneys, in which case the parties shall deliver the requested documents to the closing agent before the closing date.  Execution of any document will be considered approval of its form and contents by each party signing such document.

********

**Verification of Existing Encumbrances**
The closing agent is instructed to request a written statement from the holder of each existing encumbrance on the property, verifying its status, terms, balance owing and, if it will not be removed at closing, the requirements that must be met to obtain a waiver of any due on sale provision.

**Closing Agent's Fees and Expenses**
The closing agent's fee is intended as compensation for the services set forth in these instructions.

1    Johnson Decl., Ex. 12, pp. 2-3.[1]

2           The other document at issue in this case is the Estimated Settlement Statement (also known as

3    "HUD-1").  Each of the Plaintiffs signed one of these documents; each HUD-1 disclosed an escrow

4    closing fee and a separate reconveyance fee payable to PCD.  Johnson Decl., Ex's 11, 21, and 32.[2]  All

5    parties reviewed (or were given time to review) and signed the HUD-1's.  Cornelius Depo. (F.C.)

6    94:14-95:4; Sutherland Depo. (A.S.) 59:2-9, 65:18-21, 66:1-67:1; Robert Duncan Depo. (R.D.) 83:10-

7    21; Julie Duncan Depo. (J.D.) 31:24-32:1.  All parties were given the mandatory three-day "cooling

8    off" period to reconsider and cancel the transaction.  12 C.F.R. § 226.23; F.C. 108:21-111:25; A.S.

9    54:23-55:14, 84:21-85:15; R.D. 98:23-100:7; J.D. 43:3-19, 45:24-46:8.  None of the parties rescinded

10   the agreement.  Johnson Decl., ¶¶ 31, 3.

11          FNTCW received reports from PCD that the reconveyances were being tracked.  In the case of

12   Cornelius and Sutherland, the PCD report indicated that the deeds of trust had been reconveyed.

13   Johnson Decl., Ex.'s 2 and 3.  Regarding the Duncans, the report indicated only that the reconveyance

14   was being tracked.  Id., Ex. 4.   Cornelius received a refund of $250 from PCD (F.C. 133:25-134:6);

15   none of the other Plaintiffs received a refund, nor did they seek one.  A.S. 88:1-6; R.D. 127:11-14.

16   None of the Plaintiffs contacted either FNTCW or PCD regarding the reconveyance process or the fee

17   for reconveyance tracking services prior to filing this lawsuit.  Johnson Decl., ¶ 38.

18          Certain of the causes of actions in Plaintiffs' complaint were dismissed pursuant to a motion

19   for judgment on the pleadings.  *See* Order on Motion for Judgment on the Pleadings, Dkt. No. 56.  The

20   remaining counts of Plaintiffs' lawsuit against FNTCW allege breach of contract, breach of fiduciary

21   duty and violations of the Real Estate Settlement Procedures Act (RESPA; 12 U.S.C. §§ 2601 *et seq.*)

22   _____

23         [1]  This language is from the Cornelius transactional document.  The other two Plaintiffs signed Agreements that are identical or substantially similar.  Johnson Decl., Ex's 22 and 30.

24
         [2] Plaintiff Cornelius actually signed two good faith estimates prior to signing the Agreement and HUD-1; both
25   estimates disclosed the separate reconveyance fee charge as well.  Johnson Decl., Ex.'s 9 and 10.

26   **ORDER ON MTN**
     **FOR SUMM JMT - 3**

1   and the Consumer Protection Act (CPA; RCW 19.86.010 *et seq.*).  By this motion, FNTCW seeks

2   dismissal of those remaining counts.

3   **Discussion**

4   Fidelity National Title Company

5          At the outset, Defendants move to have Fidelity National Title Company (FNTC) dismissed as

6   a party.  FNTC is a separate California company from FNTCW and is not alleged to have engaged in

7   any of the actions which Plaintiffs deem to have been improper.  Johnson Decl., ¶ 3.  Both defendants

8   are affiliates of another company and conduct their business transactions separately; FNTC received

9   none of the fees paid by anyone in this lawsuit, nor did it execute any of the documents signed by

10  Plaintiffs.  Id.  Plaintiffs do not dispute these facts.  Their only argument in rebuttal is an allegation

11  that "Fidelity National Title Company" appears on the letterhead of many of the documents originated

12  by FNTCW.  FNTCW explains that this is merely a shorthand for their own longer company name.

13  Johnson Decl. in Support of Reply, ¶ 3.  Lacking any evidence that FNTC had any involvement in the

14  transactions at issue in this matter, the Court dismisses that entity as a party defendant.

15         The remainder of this order will be devoted to the claims remaining in Plaintiffs' lawsuit.

16  Breach of contract

17         FNTCW does not dispute that a contract, in the form of the Agreements (including the

18  HUD-1),  existed between it and the Plaintiffs.  *See* Johnson Decl., Ex. 11, 12 (Cornelius); Ex. 21, 22,

19  23 (Sutherland); Ex. 30, 31, 32 (Duncan).  The company contends that the Agreement is an

20  unambiguous document which may be interpreted as a matter of law and should be interpreted to find

21  no breach by Defendant.   The Court agrees.

22         Plaintiffs' cause of action regarding contractual breach is based on their contention that the

23  Agreement obligated FNTCW to perform their reconveyances (or ensure that they were performed) as

24  part of their escrow duties.  Response, p. 13.  Plaintiffs' rationale is that the provision requiring that

25

26  **ORDER ON MTN**
    **FOR SUMM JMT - 4**

"[t]he closing agent is to select, prepare, correct, receive, hold, record and deliver such documents as necessary to close the transaction..." (Ex.'s 12, 22, 30) necessarily includes reconveyances because "reconveyances on these loans had to be prepared and recorded in connection with the closing." Response, p. 14.

What is fatal to Plaintiffs' contract cause of action is their failure to provide support, either by way of case law, statute or expert testimony, for this position.   They present no evidence to demonstrate that reconveyance is required to close a transaction.   Similarly, their argument that, if the contracts provided for "payment to a third party to reconvey any prior loans" then the contracts were breached because "the reconveyances paid for were never performed" (Response, p. 16) is unaccompanied by any evidence that assuring the accomplishment of the reconveyances was FNTCW's contractual duty.

FNTCW, on the other hand, submits the testimony of the Vice President and County Manager of the company that the transactions are "closed" within the meaning of the escrow business when FNTCW recorded the new deeds of trusts and disbursed the escrow funds in accordance with the HUD-1; the documents which they were required to "record and deliver to close the transaction" were the new deeds of trust.  Johnson Decl., ¶ 5.  Reconveyances are a "post-closing" process.  Plaintiffs provide neither evidence nor authority to controvert this, which leaves it as an undisputed material fact.

Defendant cites Washington statutes that, as a matter of post-closing services, it is the lender's responsibility to request and the trustee's duty to perform the reconveyances.  RCW 61.16.020, 61.24.020, 61.24.110.   What PCD did for the "reconveyance processing fee" that FNTCW charged was simply to follow ("track") the reconveyance process and assist as necessary to complete it, "including paying any trustee or county recorder as necessary."  Johnson Decl., ¶ 10.  While Plaintiffs

**ORDER ON MTN**
**FOR SUMM JMT - 5**

1   certainly dispute whether this third-party company fulfilled that responsibility, they cite to no

2   provision in the contractual agreements that obligated FNTCW to ensure that PCD did so.

3          Finally, Defendant argues that the Agreement's "plain language" cannot be read to include

4   reconveyances as something necessary to "close the transaction" because sometimes reconveyances

5   are never completed or recorded; where, for example, the original documents are lost.  Id., ¶ 11.

6   Again, Plaintiffs do not dispute this.

7          Plaintiffs do little to controvert the case law cited by FNTCW which rejects the identical

8   argument they make here (i.e., McFerrin v. Old Republic Title, Ltd.,  No. C08-5309BHS, 2009 U.S.

9   Dist. LEXIS 59194 (W.D. Wash. July 9, 2009)) and which stands for the principle that charging or

10  collecting separate fees for services not included as part of the escrow closing duties is not a breach of

11  the escrow contract.[3]  See also Contos v. Wells Fargo Escrow Co., No. C08-838TSZ, 2009 U.S. Dist.

12  LEXIS 43593, at *19 (W.D. Wash. May 20, 2009)(separate wire fees); and Tompkins v. Old Republic

13  Title, Ltd., 07-2-33595-1SEA (King County Superior Court, July 18, 2008) (separate wire and courier

14  fees).

15         Plaintiffs' complaint alleges a failure to disclose that Plaintiffs were not required to use

16  FNTCW (or PCD) for reconveyance services as an additional contractual breach.  FAC ¶ 130.

17  However, Plaintiffs fail to rebut  Defendant's contention that nothing in the Agreements required

18  FNTCW to make such a disclosure (nor do they distinguish Janakanish v. First Am. Title Ins. Co., No.

19  C08-1147MJP, 2009 U.S. Dist. LEXIS 22869 at *6 (W.D. Wash. Mar. 23, 2009), where this Court

20  rejected a similar "failure to disclose" argument).

21         Plaintiffs' final attempt to salvage this legal theory is their argument that Defendant's conduct

22  constituted a breach of its duty of good faith and fair dealing.  Response, pp. 16-17.  Again, an

23

24         [3]  The Court does not consider Plaintiffs' contention that McFerrin "fails to accord the terms of the contract their
25  natural meaning" (Response, p. 14) to be a substantive rebuttal.

26  **ORDER ON MTN**
    **FOR SUMM JMT - 6**

1   identical argument has been previously rejected by this Court in <u>Janakanish</u>, on the grounds that this

2   implied duty cannot create substantive obligations which are not otherwise delineated in the contract

3   (<u>Id.</u> at *6, citing <u>Badgett v. Sec. State Bank</u>, 116. Wn.2d 563, 569 (1991)).  Plaintiffs attempt to cite

4   <u>Badgett</u> in their favor but can only do so by ignoring that opinion's language that the implied duty

5   does not extend beyond "the obligations imposed by their agreement."  <u>Badgett</u>, 116 Wn.2d at 569.

6       FNTCW is entitled to summary judgment dismissing the breach of contract claim.

7   <u>RESPA</u>

8       Plaintiffs' allegations in support of their RESPA claims (¶¶ 143-147) are founded on the

9   premise that FNTCW was being paid a fee to perform reconveyancing services for their clients, or that

10  somehow FNTCW was receiving a portion of the fee which was being assessed for PCD's services.

11  Defendant's evidence to the contrary is unrefuted.  FNTCW collected and disbursed (in its entirety)

12  the fee charged by PCD for its reconveyance tracking.  FNTCW denies that PCD is affiliated with it in

13  any way – Plaintiffs offer no proof that it is.  Plaintiffs' argument that FNTCW received fees for

14  services it was already obligated to perform is doubly refuted – as discussed *supra*, reconveyancing is

15  not a process required for the closing duties which Defendant undertook, and FNTCW received none

16  of the fees paid to PCD.  Johnson Decl., ¶¶ 6, 14, 21, 32-33; Ex. 12.

17      RESPA requires proof that the defendant received a "portion, split or percentage" of the

18  reconveyance fee.  12 U.S.C. § 2607(b).  Plaintiffs' authority, cited to support their position that the

19  facts of this case fall within the ambit of this statute, is inapposite.  Primary reliance is placed on

20  <u>Cohen v. J.P. Morgan Chase & Co.</u>, 498 F.3d 111 (2d Cir. 2007) for its support of the principle

21  prohibiting "'one service provider from charging the consumer a fee for which 'no. . . work is done'"

22  and forbidding "an undivided unearned [post-closing] fee."  <u>Id.</u> at 126.  But the defendant in <u>Cohen</u>

23  was not collecting a post-closing fee for a third party, as is the case here.  Nor has there been any

24  allegation by Plaintiffs here that FNTCW kept a portion of the fee assessed for PCD's services,

25

26  **ORDER ON MTN**
    **FOR SUMM JMT - 7**

1  whereas Chase's retention of the "unearned" fee is at the heart of the <u>Cohen</u> ruling. The Second

2  Circuit's ruling in <u>Cohen</u> avails Plaintiffs nothing in this matter.

3         The remainder of the RESPA cases cited by Plaintiffs are premised on a service provider

4  keeping all or a portion of a fee for a service which the provider (or a third party) did not provide. *See*

5  <u>Sosa v. Chase Manhattan Mortg. Corp.</u>, 348 F.3d 979, 983 (11th Cir. 2003)(a single party can violate

6  RESPA by retaining an unearned fee); <u>Santiago v. GMAC Morg. Group, Inc.</u>, 417 F.3d 384, 388-89

7  (3rd Cir. 2005)(defendant retained a portion of the marked-up cost of a third-party settlement service);

8  <u>Kruse v. Wells Fargo Home Mortg., Inc</u>., 383 F.3d 89 (2d Cir. 2004)("mark-ups" by a single culpable

9  party). Plaintiffs cite them in support of their own RESPA claim, ignoring FNTCW's proof that it

10  received <u>none</u> of the PCD fee and thus never addressing the question of whether RESPA applies to a

11  party which did not retain a "portion, split or percentage" of a fee.  The Court finds that the answer is

12  clear: RESPA does not apply and summary judgment dismissing this cause of action is therefore

13  granted.

14  <u>Breach of Fiduciary Duty</u>

15         As with their implied duty of good faith and fair dealing argument, Plaintiffs seek to extend

16  Defendant's fiduciary duties beyond the four corners of their agreement.  The case law (and the prior

17  rulings of this Court) does not favor their position. Washington law limits an escrow agent's duties to

18  "those set forth in the escrow agreement."  <u>National Bank of Wash. v. Equity Investors</u>, 81 Wn.2d

19  886, 910 (1973).   The <u>Janakanish</u> ruling held that an "escrow agent's duty is limited to the substance

20  of the escrow instructions."  2009 U.S. Dist. LEXIS 228689 at *18-20.  Based on the Court's finding

21  that the reconveyance service was outside the scope of FNTCW's escrow contract and that Defendant

22  did not otherwise contract to provide that service, Plaintiffs' appeal to a larger, more generic fiduciary

23  obligation meets with no greater success than their previous claims.

24

25

26  **ORDER ON MTN**
    **FOR SUMM JMT - 8**

1    Plaintiffs point to the language of the WA Supreme Court in <u>Denaxas v. Sandstone Court of</u>

2  <u>Bellevue LLC</u>: "[T]he escrow agent, as a fiduciary to all parties to the escrow, 'must conduct the

3  affairs with which it is entrusted with scrupulous honesty, skill and diligence.'" 148 Wn.2d 654, 663-

4  64 (2003)(internal citations omitted).  The Court sees little distinction between "the affairs with which

5  [the escrow agent] is entrusted" and "the substance of the escrow instructions."

6    Plaintiffs clearly want that net thrown wider, however, and point to a series of "undisputed

7  facts" which "raise genuine issues of material fact" (Response, p. 22): namely, that FNTCW "knew or

8  had reason to know" that (1) other lenders would perform the reconveyances, (2) PCD would not

9  perform the reconveyances if the other lenders did so, (3) the reconveyance fee was therefore

10  unnecessary, (4) PCD had "never given a single report on refunds" and (5) Defendant did not have a

11  system in place to track whether refunds were being made.  Despite this plethora of assertions,

12  Plaintiffs cite to no evidence that FNTCW "knew or had reason to know" <u>any</u> of those allegations to

13  be true.

14    Once the moving party has met its initial burden, the burden shifts to the nonmoving party to

15  establish the existence of an issue of fact regarding elements essential to that party's case, and on

16  which that party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24

17  (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings or mere

18  allegations, but instead must have evidence showing that there is a genuine issue for trial.  <u>Id.</u> at 324.

19  Plaintiffs' proof falls short of meeting this burden.  As Defendant points out, "Plaintiffs make no

20  attempt to offer specific, significantly probative evidence to show a deviation from the escrow

21  instructions."  Reply, p. 10.

22    Defendant also raises the "economic loss doctrine" as a bar to Plaintiffs' recovery in tort:

23  "[W]here a contractual relationship exists and the losses are economic losses. . . the economic loss

24  rule [bars] recovery for alleged breach of tort duties."  <u>Alejandre v. Bull</u>, 159 Wn.2d 674, 682 (2007).

25

26  **ORDER ON MTN**
    **FOR SUMM JMT - 9**

1    This Court has previously held that the doctrine bars recovery where the breach of fiduciary duty

2    alleged is a duty which was assumed under the contract.  <u>WA State Auto Dealers Ins. Trust v. AON</u>

3    <u>Consulting Inc.</u>, No C07-1182MJP, 2008 U.S. Dist. LEXIS 72712 at *7 (W.D. Wash. September 24,

4    2008).  Plaintiffs point out that the <u>AON</u> holding requires that the contractual duty and fiduciary duty

5    be identical, but their attempts to demonstrate that there is a fiduciary duty which is *different* than that

6    undertaken in the contract have been unsuccessful, as discussed above.  Defendant is entitled to

7    summary judgment dismissing the breach of fiduciary duty claim.

8    <u>Consumer Protection Act</u>

9         CPA requires proof of five elements: "(1) an unfair or deceptive act or practice; (2) occurring

10   in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or

11   property; (5) causation."  <u>Hangman Ridge Training Stables v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778,

12   780 (1986).  FNTCW interposes two defenses to this claim: (1) no proof of a deceptive or unfair act

13   and, alternatively, (2) that they acted in good faith under a reasonable interpretation of the law.

14        Plaintiffs' counterarguments to this position are not persuasive.  They cite, as "unfair and

15   deceptive acts," the failure to disclose that the "reconveyance fee" was for a service which Defendant

16   was obligated to provide as part of their duties as escrow agents.  The Court has previously dispensed

17   with this argument.  Plaintiffs also point to Defendant's failure to disclose that "prior lenders would in

18   fact be undertaking the reconveyance themselves," (Response, p. 24) but do nothing to controvert

19   Defendant's testimony that it did not know at the time of signing how the reconveyance would be

20   accomplished.  Johnson Decl., ¶¶ 26-30.

21        Finally, Plaintiffs allege a failure to disclose that they would not receive a "full refund from

22   Fidelity as was their entitlement."  Response, p. 24.  Plaintiffs have in fact failed to establish that

23   Fidelity was responsible for refunds of reconveyance fees.  Any refunds due and owing would have

24   had to come from PCD, not FNTCW.  In any event, Plaintiffs present no evidence that there was any

25

26   **ORDER ON MTN**
     **FOR SUMM JMT - 10**

1  way of knowing at the time of signing whether any refunds would be owing because the

2  reconveyances had not yet been performed.  Nor, as discussed previously, have Plaintiffs established

3  that was there any contractual duty on FNTCW's part to track whether refunds were in fact owing.

4        The Court is satisfied that there are no genuine issues of material fact and that, as a matter of

5  law, Defendant is entitled to dismissal of the CPA cause of action.

6  **Conclusion**

7        No evidence has been adduced that co-defendant Fidelity National Title Company was

8  responsible for any of the acts complained of in Plaintiffs' FAC; FNTC is dismissed as a party to this

9  litigation.

10        Plaintiffs have failed to adequately respond to Defendant FNTCW's evidence and case

11  authority indicating that there are no material issues of disputed fact and that Defendant is entitled to

12  summary judgment on the remaining claims.  Plaintiffs' causes of action for breach of contract and

13  fiduciary duty and for violations of RESPA and the Consumer Protection Act find no support in fact

14  or law; summary judgment is GRANTED and Plaintiffs' complaint is DISMISSED with prejudice.

15

16        The clerk is ordered to provide copies of this order to all counsel.

17        Dated: April __1__, 2010

18

19

20        Marsha J. Pechman
          U.S. District Judge

21

22

23

24

25

26  **ORDER ON MTN**
    **FOR SUMM JMT - 11**